Good morning, your honors. Hang on, we've got the clock a little jangled. If we can set it for 15. Bingo. Okay. Good morning, your honors. My name is Marie Andrade. I represent the petitioner in this case. We're back here after a 2010 remand. The case has a bit of a developed procedural history, which I'm happy to stand for questions for. But I do think that there is a very narrow ground on which this court can actually resolve the case, notwithstanding the procedural history. So we have raised three issues that we think would entitle us to have the petition granted. Because the question is whether or not the board found correctly that my client is statutorily ineligible for non-legal resident cancellation of removal. And the board found him ineligible on a statutory ground. The ground that they found him ineligible for is they said he had been convicted of a crime involving moral turpitude. So our first argument was that the board in the first instance couldn't make that finding. Not as a matter of law, not as a matter of fact, actually. Because you can search the entire record of conviction, and there is not any document that identifies the actual statute of conviction that the government argued as moral turpitude. He admitted, didn't he, that he had been convicted of petty theft in Idaho in 1997? He did, Your Honor. And he submitted the summary of the criminal cases, petty theft, 64 days, and 215-50 fine. He submitted that to the court, didn't he? He did. That document, however, does not have a statute of conviction on it anywhere. And the crime of moral turpitude was found against my client because he had been convicted of a moral turpitude offense. But there was never any evidentiary basis published. Do you have any cases that suggest the BIA can determine what the statute of conviction is when one is not provided? I don't, Your Honor. To the contrary, it seems to me that that's exactly what they require the BIA or the IJ to identify the element of the statute of conviction to determine if the statute is categorically a CIMT. That's what it says to do. There's two ways in which when a conviction causes or triggers an adverse immigration consequence, there's two ways in which that can be found. One is there is a provision in which you can make sufficient factual admissions to admit a conviction such that it can be considered a conviction as a matter of law. But in order to do that, much like the court observed in 2010's decision, that there are certain requirements that must be met in that you must present the individual with the elements of the offense, with each element. And the person must admit those elements. I have the sites in the prior available. I can provide them on BMAN. But that's the only way that you can admit admission. And this court observed in 2010, it applied those board decisions that hold that to find that, you know, even though he talked about having a sexual relationship with a minor, that it wasn't enough to be a conviction. But the second way is really the categorical approach. I mean, whether someone's been convicted of a moral interpretive offense is a categorical inquiry. Just a second. Idaho Code Section 1824083 sets forth a punishment that can be received for petty theft, right? That's right. Where 1824072 provides that all thefts are not defined as grand theft are petty thefts, right? That's correct. And there's no assertion by you or your client that their citation to 24083 was an error. No, but we would submit as a matter of law. If it's not an error, what you argue instead is their citation to the petty theft statute was fact-finding. That's your argument. But if they can cite to 24083 and that is the petty theft statute, it seems to me this is a tough argument for you to make. Well, then let's move to the easy one because I've got an easy one for you. The easy one is that let's assume they're right. Let's assume they're right and let's assume the statute of conviction is 182403 sub 3, which is what the government argued before this court when we were here before. That statute is indivisible and overbroad as to the duration of the intended deprivation, the very hallmark of what makes a moral interpretive offense or not. This could be, if it's a temporary deprivation, that would not fit within the categorical. That's right. And we rely on three things, three arguments to make for this position. First, if you... Is there any Idaho judicial opinion that holds a temporary taking would result in a conviction for petty theft? There is, Your Honor, and we cited it in... What is that case? It's United States v. Caldwell. It's cited at docket 18. Let me stand by here. I might give you the wrong docket. I'm sorry, docket 49. And that's our supplemental brief that we the statute defines... Sub 3 says that you have to intend to appropriate or deprive somebody of their property. I want to look at that case because I'm not sure I really focused in on that case. But the reason I ask you that question is it doesn't seem to me that the Idaho statute is any different than the statutes for petty theft in California and otherwise that have been held a CIMT. If I compare the statute with the statutes that have been held to be a CIMT, they're exactly the same. And so therefore I say to myself, golly, how am I going to get around that? You look at matter of De La Nuz, which is their decision from the BIA, that all say they are that. We don't dispute that as an element, if a jury must unanimously find that an individual intended to permanently deprive somebody of their property, that that's moral turpitude. The reason why Idaho, the result of the Idaho statute, is different is because the case law interprets the words differently, although the face of the statute may look the same. So again, there's three arguments that we have. One is the 18-2403 itself. The overall statute has several subsections. Some of those subsections specifically on their face say, in order to be guilty of theft by receipt of stolen property, you must permanently deprive. Another, intend to permanently deprive the owner of the property. Another subsection says you can, theft of services, says that you can temporarily deprive. But the subsection three and a number of other of those subsections don't say permanent or temporary. They just say you have to intend to appropriate. Then if you look at the definitions as to what intend to appropriate means, it says right there that it could be permanent, but it can't be temporary. In State v. Caldwell, a state case construes it that way, and the comps teaches us that we have to look to state case law. We have to look to what actually a jury must unanimously find for it to be an element. And in this case, the subsection accepting it as true, if we wish, that it's 18-2403, it's simply indivisible and overbroad. Okay. If I don't buy that, have you got another good argument? Yes, I do. Because I'm telling you, the reason I can't find a judicial opinion holding a temporary taking would result in a conviction for petty theft. I look at the jury and patterned jury instructions, that does not suggest it. I look at deprive, the word as Idaho defines it, that doesn't suggest it in 24-023A. I look at appropriate, and I can't find it because appropriate says exercising control over the property permanently or for so extended a period or under such circumstances as to require the major portion of its economic value or benefit to 18-24021A. Thus, I'm having a tough time. Respectfully... So if I don't agree with you, because... And I'm going to look at Caldwell to make sure, then what do I do? Okay. So if Caldwell doesn't convince you, or State v. Olin, which we cite, or the jury instructions, where respectively we contend that they actually are read to, the deprivation of economic value can be less than permanent. Then we can find that in order to deny the petition, this court has to find that not only was the statute properly identified on this record, which doesn't have the statute of which explained Matter of Almanza, a familiar name, but the agency case that says that when you decide to apply the crime of moral turpitude deportation ground against a non-admitted alien for the purposes of saying they're not eligible for cancellation or removal, that the agency can decide what language, descriptive language, in the moral turpitude ground. So remember, the moral turpitude ground says... Are you talking about Matter of Cortez-Canales? I am, Your Honor. Thank you. Because you said Cortez, and I just want to make sure I'm looking at the same... Yes, you're on the right one. So it says, if you are committed an offense that's a crime of moral turpitude within five years of admission, as a legal resident, you're deportable. What Cortez-Canales says is, don't worry about the within five years of admission. We're just going to read that out. And we're going to read that out because we think that what was intended by Congress was to only apply the criminal related language that appears in the INA. We would submit the first. The agency is not in the best position to determine what is criminal and what is not. But even if they are, and they're right to say, within five years of admission, it's not really criminal. How do we apply it? This court and the board has over and over issued cases that try to give meaning to all of the descriptive language that appears in a statute. And that's what they've done. The board did it in Rato-Varcia-Hernandez when they said, when we apply the petty offense exception to people who are inadmissible, we consider as part of that statute... Excuse me. When somebody who's unadmitted is seeking admission to the United States and they have a crime that's part and parcel of the statute. I'm glad you got there because I want to ask you a tough question, or at least tough for me. If the committed within five years after date of admission language, which you're now talking about, should be applied to crimes involving moral turpitude under 1227A2A1, do we apply a 10-year standard to LPRs given the additional language or 10 years in the case of an alien provided lawful permanent residence status under the section? Well, we would object to such a reading, but we've argued that actually the more fair reading to give as much meaning to that language would be within five years of entry for an unadmitted alien. Honest truth is, it seems to me that what the BIA was doing in matter of separate time periods for aliens who entered illegally would get a greater right than those who had entered lawfully. I mean, if I said that the committed within five years after date of admission was really applicable, then I would go to the standard about the LPRs and it's 10 years. So then what I would really be saying is, I'm going to give aliens who entered illegally more rights than those who entered legally. Right, and we're not proffering that construction. But if we don't write out the language committed within five years, then it seems to me we can't write out the language about the 10 years, and therefore we're in a tough state. Well, I guess this court has dealt with this problem before with like the technical definition of admission. We have dealt with it before. I think Gonzalez-Gonzalez dealt with it. Gonzalez-Gonzalez dealt with, and we don't dispute that it stands for the proposition that if you're unadmitted, you can still be rendered ineligible for cancellation if you have an offense that appears on the deportation grounds. But Gonzalez-Gonzalez says nothing about what to do with a descriptive language. Well, I understand, but Gonzalez-Gonzalez is pretty straight about what we look at when we're looking at this kind of a situation. And I guess I'm having trouble because I don't know whether Cortez-Canales really relied on Gonzalez-Gonzalez or not. But I do know that if I look at Gonzalez-Gonzalez, it would give me plenty of application for doing it. The board here in the Ninth Circuit has come, and the board has noted that there are different definitions of the word admission. Because, for instance, when someone adjusts status, this court has held that it is deemed an admission for purposes of waiver because otherwise you would have people that were unadmitted that would get greater benefits than people who were admitted simply because they adjusted status instead. Also, as we said in our brief, that Canales really is a diversion from established BIA precedent before. I mean, Cortez-Canales endeavored to try and explain that there are other decisions when they talked about giving full meaning to descriptive language that was dicta. It is such a departure from how they've interpreted and really endeavored to give meaning to the language that we think that if they wish to do that, they must do that in an en banc decision. That they can't and without substantive analysis essentially overrule its prior precedence. I see my time is just about expired. There's a list here from the government, and we'll give you a chance to respond. Thank you. Good morning. Greg Pennington on behalf of the Attorney General. Could you address the last of the three arguments first, please? Sir? Could you address the last of the three arguments first, please? The three arguments she made? Yes, please. With regard to admission? Yes. And could you, before you start, Cortez-Canales was appealed to this court. I was on that panel. We heard argument. We went through all of this drill on the interchange that's just happened on this subject, and the government and the case agreed to mediation, and that's been pending. Do you have any idea what the status of that mediation is? I do not know the status of the mediation. I can surely find out and provide it to the court after the hearing. Because presumably the government is taking that opportunity to think about its position. Well, I don't know. That could be. And I'm not asking for a disclosure of the substance of the mediation, but it would be useful to know in the case that already got argued on this, but because the government agreed to mediation hasn't resulted in a published opinion. Right. Well, sometimes the mediation, and I would suggest that Cortez still stands as long as they don't have returned. I understand that. I understand that, but that was the very opinion that the board relied on, and we heard argument as to whether it was correct or not. Right, and I don't have a clue as to why we sought mediation or if it was agreed upon by the parties to maybe further some prosecutorial discretion, because sometimes that... I understand all that, counsel. So you actually... You are familiar. I just asked you to find out and let us know what the status of the mediation was. I will, Your Honor. And as far as the admission language in 1227A2AI, I think Judge Smith kind of says that Gonzales-Gonzales clears that up because that dealt with an alien that was ineligible for cancellation of removal under 1227A3 or A2. It was the domestic violence one. Right. And that had similar language in it. It says that any alien who has committed an and the court said in Gonzales-Gonzales that will... That would just render it meaningless to most aliens that apply for cancellation of removal for non-permanent residents because they've never been admitted, and that just wouldn't apply, and that wasn't Congress's intent. So let me ask you a question as to Cortez-Canales. Did the BIA and Cortez-Canales exercise its decision, or did it rely on Gonzales-Gonzales? It didn't rely on Gonzales-Gonzales. It cited that it was in line with Gonzales-Gonzales, but the board gave two rationales. The most ambiguous that Congress knew how it was legislating when it came up with this because in the stop time rule, which is 1229B, they talk about an alien stops continuous physical presence if they're deemed inadmissible under section 11 or 1227. So they knew how to use the terms inadmissible or deportable. Here they chose not to, and they just said an alien who's been latched onto, and the board didn't say it was following Gonzales-Gonzales. It said that the statute was unambiguous, and then it went on to say that even if the statute was ambiguous, that it was going to exercise its authority under Chevron to fill in the holes, if you will, and say that this is the way we would interpret it. So if we conclude the statute is ambiguous and the BIA misconstrued the ambiguity, can we still affirm? You can, because they gave you some wiggle room. They said that if the statute is ambiguous, then we are exercising our authority to interpret the statute under Chevron. So you could find... Oh, we're talking about Chevron step two at that point. Correct, and you could find that their interpretation is reasonable and do so by citing Gonzales-Gonzales. Did the BIA ever say that the statute was ambiguous? I did say the statute was clear. They say the statute's clear, and we think it's ambiguous. I'm not sure that we need to defer. I think we need to send it back and say, hey, we think it's ambiguous, so would you please do your job? Well, they did say it was unambiguous, and they gave their legislative reasons why, but then they also said that even if the statute were ambiguous, that we would find that we would interpret it this way. So then... So where do they say that? That is on... Okay, so I'm looking at Cortez-Gonzales, right? Or am I looking at something else? Yes, that's what you're looking at. And where am I looking? I thought I wrote it on my notes here, but they did cite that, and I don't want to waste a lot of time, but I can provide it to the court. That's an important issue to me, but I guess I can read it myself and find out if it's there. It is there. It's one sentence towards the end of it, but they do say that if the statute is ambiguous, then we would exercise our authority under Chevron to find that this is our interpretation of it. I don't have that marked either, so I can't... And then that's my fault. I thought I wrote it down on my little cheat sheet here, but I did not. But I can provide it to the court as well as... If it's in the opinion, it's either there or it's not. It is there, and I can provide that as with the answer to Judge Fischer's question as well. And to move on to the other arguments that Petitioner's Counsel made regarding the crime involving moral turpitude, she proposed some easy resolutions according to her, but there is an even easier one, and that's that the court doesn't even have to reach that. In the 2008 petition for review, all of that was briefed, whether it was a categorical crime involving moral turpitude, whether the correct statute was then identified. Okay. No, I just found your language. The BIA says, moreover, we find that even if the language of section... And I wish they'd give me a cut of a section instead of this darn section from the statutes. If it were found to be ambiguous, we would interpret it in the same manner. But there's no analysis, and what bothers me is that if you look at the legislative history, it goes absolutely contrary to what the BIA found, and they don't talk about it. The legislative history enacting... Enacting this section. Congress describes 129B-B-1 in the House Conference Report, and it says, this is now the Conference Report, section 129B, parent B, parent 1, provides that the AG may cancel removal in the case of an alien who has at no time been convicted of an offense that would render the alien inadmissible or deportable. That is to say, that's the whole thing. That's not just a subsection. In order to render the person inadmissible or deportable, you've got to satisfy both the petty offense, that is to say the CIMT, and the five-year limitation or the 10-year limitation. So the legislative history, if that's the way we're supposed to interpret the statute, you're wrong, and so is the BIA, and the BIA doesn't talk about this. Well, the court in Gonzales-Gonzales found that the statute was unambiguous and that an alien doesn't have to be inadmissible or deportable. But it doesn't look at this particular provision. It said, listen, we say that this is... We're sending you off... This is a description, but then it doesn't analyze the particular issue we've got here in front of us. Well, I would suggest that that's just the House Report, and that doesn't reflect the actual language that was put into the statute. But the statute says that it's an offense described under that renders an alien ineligible for cancellation or removal. It doesn't say an alien that is inadmissible under Section 1182 or deportable under 1227. It's just that they've been convicted of an offense described under. And that's what Gonzales-Gonzales went on in saying that it doesn't matter whether an alien is inadmissible or deportable. It's whether they've been convicted of a CIMT or convicted of a domestic violence violation or firearms offense. We're not looking at whether they're inadmissible or deportable. And as I was suggesting earlier, they use the terms inadmissible and deportable in the stop time rule, which says that an alien stops accruing continuous physical presence in the United States if they've been convicted of an offense that would render them inadmissible under 1182. And that's only two subsections down. And Congress is supposed to what they're doing when they write in one section what they leave out in another. So, I would suggest that it is unambiguous, even if maybe what was on the House report, it wasn't included in the final language of the statute. And back to the CIMT issue, the Board here found that the 2010 decision from this Court didn't address whether it was a CIMT or any of that issue. It found that the remand was indiscussing. And it only decided on that issue is whether that after five years language should be included in determining whether an alien is ineligible for cancellation or removal. And that's what it did in this decision. And it declined to address all the arguments that were raised in the original 2008 petition for review, which this Court passed on. So, the easy route around that is to say it's not even properly before the Court. Well, but wait a minute. We didn't, they didn't, the Court, our Court didn't address those issues. So, what you're saying is that the BIA didn't address them on remand. So, you're saying, well, okay, now they don't get a chance when they're back up here to raise these issues. Well, we just don't have a Board decision on that. Applying the categorical approach or to the panel in the 2008 petition for review. And from what I read of the 2010 decision, is it seemed like a pretty limited remand on this issue that we've been discussing this morning is whether this after five years. They had raised the same arguments that they're trying to raise today in that 2010 appeal, right? They did. Yeah. And we didn't address them. We found another reason to send it back. So, you're now saying, well, we can't address those issues today because what? Well, I would suggest that Mendez Gutierrez says that the Board doesn't have the power to go outside of a limited remand. So. So, what should we do then? Well, that's what. I think that there's traction in her argument about the categorical approach and the fact that there's this temporary deprivation issue that could render the statute non-categorical and that could then raise the evidence. You want that to go back to the BIA to consider? Well, I would suggest two things. Mendez Gutierrez says that the proper course of action would have been to file a motion to reconsider or reopen with the Board of Immigration Appeals saying, you overlooked my arguments. You made an error of law or an error of fact in doing so. Second, if the court does want to go outside the limit. Even though the BIA relied on a remand to say that they couldn't. Correct. Consider their arguments. Well, they were just concerned with addressing this court's concerns in the remand. Exactly. So, you're saying that they should have then gone and did a motion to reconsider to say, well, we would argue the scope of the remand at that point. That's what Mendez Gutierrez suggested is that would be the proper. BIA would be well positioned to understand what our mandate meant. They've already interpreted it, so it seems an act of futility, but okay. Correct. But if the court does want to go there, it is a question of law. I don't know what good a remand would do. We could supplemental. We could reach it. We could reach it and I would ask to be able to. We could do it as a matter of law. Correct. And I would just be asked if I could submit a supplemental brief on that issue. I think Judge Smith had it laid out pretty well that it is permanent takings under the statute. And if you look at the jury instructions that have the title petty theft, the elements of that statute look at an intent to deprive or an intent to appropriate. And the definitions of deprive and appropriate in the Idaho Code talk about they're either permanent or it renders the item so no good that it doesn't have any value left. It equates to permanence. With respect to marching orders for the advocates, as I understand the panel's decision at the moment, we'd like you to report back on the status of mediation, but as a further briefing, wait for any order from this court. Sure. Yes, Your Honor. And if you don't have any further questions, we would just ask that this petition for review be denied as well. Okay. Thank you. Thank you. Let's put two minutes on the clock. Thank you, Your Honor. To address the last point first, we also think that the cleanest way to resolve this would be to reach the legal question whether 18-2403 is divisible or not. We would suggest that this case shouldn't go back to the board to consider that question. It's construing a criminal statute. That's really the province of this court. And we also think that the remand was actually not restricted. The purpose of the remand was that the board took an overly narrow view. The problem identified in the 2010 decision was that the board did not provide a substantive analysis about how it applied the relevant statutes in this case. Then it said, for example, the five years language, petty offense, what do we do with that? And it said, we instruct the board to look at these statutes and go back and enter a proper order. And we argue that the first logical step of deciding how to apply those statutes and produce a proper order is figuring out what the statute of conviction is. So we think they've had a fair opportunity to address that, that they chose not to, and that we would not object to supplemental briefing on that. Did you argue that? To the board? Yeah.  So you had your opportunity to argue to the board wider than the narrow remand, which the government says. Oh, I'm sorry. No, I misunderstood your question. I did not argue that the remand is broad enough for you to address this. We first brought it up in the affirmative brief, in the reply. Now you're saying the remand was broad enough for them to full well address it without you having to make the motion, but you didn't address it? No, we did address it. What we didn't address in the opening was, hey, the remand's really broad enough for you to get to this because we thought that was obvious. And so we said, so hey, first step, find out the statute of conviction. You can't do it because you don't have a statute in the record. Then we got a response brief saying, oh, that's outside the scope of remand. And then we replied, much like we did here, that said, no, you're intentionally taking a narrow view of the remand to avoid this question. So there's no further questions. Okay. Thank you. Thank you very much. Thank you. Lozano Arredondo versus Lynch submitted for decision.
judges: W. Fletcher, Fisher, N.R. Smith